IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 19, 2002 Session

## MECHANICS LAUNDRY SERVICE v. AUTO GLASS COMPANY OF MEMPHIS, INC. d/b/a JACK MORRIS AUTO GLASS

**A Direct Appeal from the Circuit Court for Shelby County**
**No. 306057     The Honorable George H. Brown, Jr., Judge**

---

### No. W2001-01113-COA-R3-CV - Filed March 8, 2002

---

In this breach of contract case, defendant corporation denies liability under the contract because defendant's employee who signed the contract, ostensibly on behalf of the corporation, had no authority to do so. Plaintiff contends that the person signing the contract had apparent authority to act for the corporation. The trial court granted summary judgment to the plaintiff. Defendant appeals. We vacate, render, and remand.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Vacated, Rendered, and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J. and HOLLY KIRBY LILLARD, J., joined.

Mark Griffin, Memphis, For Appellant, Auto Glass Company of Memphis

William A. Cohn, Cordova, For Appellee, Mechanics Laundry Service

### OPINION

Plaintiff, Mechanics Laundry Service, a corporation, (hereinafter Plaintiff or Mechanics) sues the defendant, Auto Glass Company of Memphis, Inc., d/b/a Jack Morris Auto Glass, a corporation, (hereinafter Defendant or Morris) for breach of contract claiming unpaid accounts for $17,373.46 and for attorney fees in the amount of $5,785.36.[1]

---

[1] The record reveals that the amounts claimed are in fact claimed pursuant to the contract for liquidated damages and attorney fees. We also note that Plaintiff did not comply with Tenn. R. Civ. P. 10.03.

Defendant's answer denies that it is indebted to Plaintiff in any amount.  The answer also in great detail lists factual allegations as affirmative defenses and states the legal defenses as: "Failure to State a Claim, Denial of Sworn Account, Unenforceable Contract, Lack of Consideration, Fraudulent Inducement, Unilateral Mistake, Unclean Hands, Waiver and Abandonment, Cancellation, Limitation of Damages, and Penalty."

Both parties filed motions for summary judgment supported by various affidavits and depositions.  After a hearing on the motions on April 6, 2001, the trial court entered its order on April 23, 2001, granting Plaintiff's motion for summary judgment and denying Defendant's motion for summary judgment.  Defendant has appealed and presents three issues for review, as stated in its brief:

> 1. Whether the trial court erred in finding that the 1997 contract under which it granted recovery was a valid and binding contract between the parties.
>
> 2. Whether the trial court erred in finding that Morris Auto Glass owes $23,158.82 in liquidated damages to Mechanics Laundry Service.
>
> 3. Whether the trial court erred by awarding liquidated damages for store locations not covered by the 1997 contract under which it granted recovery.

We have condensed these three issues into one issue:  whether the trial court erred in granting Plaintiff's motion for summary judgment and denying Defendant's motion for summary judgment.

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law.  Tenn. R. Civ. P. 56.04.  The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists.  ***Bain v. Wells***, 936 S.W.2d 618, 622 (1997).  On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence.  ***Id.***  In ***Byrd v. Hall***, 847 S.W.2d 208 (Tenn. 1993), our Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial.  In this regard, Rule 56.05 [now Rule 56.06] provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact for trial.

***Id.*** at 211 (citations omitted) (emphasis in original).

Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. ***Carvell v. Bottoms***, 900 S.W.2d 23, 26 (Tenn. 1995). Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. ***Bain***, 936 S.W.2d at 622. Therefore, our review of the trial court's grant of summary judgment is ***de novo*** on the record before this Court. ***Warren v. Estate of Kirk***, 954 S.W.2d 722, 723 (Tenn. 1997).

It is undisputed that in February of 1995, Plaintiff and Defendant entered into a Master Service Systems Rental Agreement for the Plaintiff to provide and upkeep employee uniforms for all locations of Defendant's business. The contract was executed by Defendant through its president on February 10, 1995. It was then later executed by Plaintiff through its president on February 13, 1995. Richard J. Caen, Plaintiff's president, by letter dated February 15, 1995, addressed to Defendant's president, sent a filed copy of the contract. The letter states:

> Enclosed is your file copy of the new rental agreement between our companies. We are pleased that your firm has decided to renew our rental program through a new agreement. We feel that the products and services supplied by us will help your company project a strong image. Here at Master Service Systems we are proud that we have served the Mid-South since 1946.
>
> It is our intent to provide you with tops in both products and service. If we may be of service to you in any way, please contact me.
>
> Thank you for the opportunity to serve you. We are looking forward to a great relationship.

The contract provided that the rental agreement was for a period of time of 36 months from the date of first delivery. Although there is no indication in the record when the first delivery occurred, the parties seem to agree that the 36-month period expires 36 months from February 10, 1995 (February 10, 1998).

On September 16, 1997, David Goodwin, a route delivery employee for Plaintiff, presented to the Defendant's Union Avenue store manage, Melba Morris, a proposal for a rental program and a Master Service Systems Rental Agreement similar to the 1995 agreement then in existence between the parties. Melba Morris signed the proposal and the contract as manager on September 16, 1997. The contract itself indicates that it was accepted by Plaintiff on September 19, 1997 from a signature of R. J. Caen, President. There is no proof in the record that a fully executed copy of this contract was ever sent to an employee or executive of the Defendant.

In support of the Plaintiff's motion for summary judgment and opposition to Defendant's motion for summary judgment, Plaintiff filed the affidavits of Richard J. Caen, President of Mechanics Laundry Service; Michael Osbahr, an employee of Mechanics Laundry Service; and David Goodwin, an employee of Mechanics Laundry Service. Mr. Caen's affidavit states:

> My name is Richard J. Caen. I am the President of Mechanics Laundry Service. We entered into a contract with the Defendant Jack Morris Auto Glass. Attached as Exhibit 1 to my Affidavit is a copy of that contract.
>
> The Defendant Jack Morris Auto Glass had different locations. We invoiced each location separately. Attached as Exhibits 2, 3, 4 and 5 are the invoices which we issued upon termination of the contract by Jack Morris Auto Glass. These invoices reflect the clause in the contract dealing with the termination of the contract. The invoices reflect any damaged goods, any unpaid invoices, and the liquidated damages provision of the contract.
>
> According to my files which are business records, my employees dealt with Melba Morris who represented to us that she was the manager and had full authority to enter into any and all agreements. It was also represented to us by her superiors that she had full authority to enter into contracts.
>
> Further, according to my files which are business records, the reason that the Defendant wished to terminate the contract was because he wanted to receive the same service from another company at a lower price. Neither I nor my representatives ever indicated to the Defendant or any of its representatives that we would not enforce the 1997 contract, which is attached hereto as Exhibit 1.
>
> The amount owed is $17,373.66, plus attorney fees of $5,785.36 pursuant to the contract in Exhibit 1.

Mr. David Goodwin's affidavit states:

> My name is David Goodwin. I am an employee of Mechanics Laundry Service. We entered into a contract with the Defendant Jack Morris Auto Glass. Attached as Exhibit 1 to my Affidavit is a copy of that contract.
>
> The Defendant Jack Morris Auto Glass had different locations. We invoiced each location separately. Attached as

-4-

Exhibits 2, 3, 4 and 5 are the invoices which we issued upon termination of the contract by Jack Morris Auto Glass. These invoices reflect the clause in the contract dealing with the termination of the contract. The invoices reflect any damaged goods, any unpaid invoices, and the liquidated damages provision of the contract.

I dealt with Melba Morris who represented to us that she was the manager and had full authority to enter into any and all agreements. It was also represented to us by her superiors that she had full authority to enter into contracts.

It was represented to me by employees of the Defendant that the reason that the Defendant wished to terminate the contract was because he wanted to receive the same service from another company at a lower price. I never indicated to the Defendant or any of its representatives that we would not enforce the 1997 contract, which is attached hereto as Exhibit 1.

Mr. Osbahr's affidavit states:

My name is Michael Osbahr. I am an employee of Mechanics Laundry Service. We entered into a contract with the Defendant Jack Morris Auto Glass. Attached as Exhibit 1 to my Affidavit is a copy of that contract.

The Defendant Jack Morris Auto Glass had different locations. We invoiced each location separately. Attached as Exhibits 2, 3, 4 and 5 are the invoices which we issued upon termination of the contract by Jack Morris Auto Glass. These invoices reflect the clause in the contract dealing with the termination of the contract. The invoices reflect any damaged goods, any unpaid invoices, and the liquidated damages provision of the contract.

I dealt with Melba Morris who represented to us that she was the manager and had full authority to enter into any and all agreements. It was also represented to us by her superiors that she had full authority to enter into contracts.

It was represented to me by employees of the Defendant that the reason that the Defendant wished to terminate the contract was because he wanted to receive the same service from another company at a lower price. I never indicated to the Defendant or nay of its

-5-

representatives that we would not enforce the 1997 contract, which is attached hereto as Exhibit 1.

In opposition to Plaintiff's motion for summary judgment and in support of Defendant's summary judgment motion, Defendant filed affidavitz of John Morris, Defendant's president, and Melba Morris, the employee who signed the disputed contract in 1997.

The John Morris affidavit states in pertinent part:

1. My name is John Morris. I am the President of Auto Glass Company of Memphis d/b/a Jack Morris Auto Glass ("Morris Auto Glass").

2. As President of the Company, I am the officer authorized to sign contracts and enter into agreements on behalf of the Company.

3. Melba Morris is the store manager for the Union Avenue location of Morris Auto Glass.

4. As the Union Avenue store manager, Melba Morris's job is to handle the day to day operations of that store location, including signing invoices and service reports from vendors.

5. Melba Morris is not authorized to sign contracts binding Morris Auto Glass.

6. In October of 1997, I contacted a salesperson at Mechanics Laundry Service about changing our employee uniforms and entering into a contract for a new style of uniforms when the existing contract expired in February 1998.

7. It was during this conversation in October 1997, that I first became aware that Melba Morris had signed an agreement for employee uniforms from Mechanics Laundry Service.

8. I informed the sales person that Morris Auto Glass had an existing contract with Mechanics Laundry Service, that Melba Morris did not have authority to sign contracts on behalf of the business, and that Morris Auto Glass would not consider itself bound by any contract that Melba Morris signed. I followed this conversation up with a letter to Richard J. Caen, the president of Mechanics Laundry Service.

9. Mr. Caen did not personally reply to me regarding my letter or the document that Melba Morris had signed.

10. I met with Mike Osbahr from Mechanics Laundry Service in November of 1997. I told Mr. Osbahr that Melba Morris was not authorized to sign any contracts on behalf of Morris Auto Glass and that I did not consider the company to be bound to that document.

11. Mr. Osbahr never indicated that Mechanics Laundry Service was going to try and hold Morris Auto Glass to the contract signed by Melba Morris. Quite the opposite, I began negotiating with Mr. Osbahr for a contract for a new style of uniform to start when the existing 1995 contract expired in February of 1998.

12. In addition, I entered into a contract for floor mat service with Mechanics Laundry Service through Mr. Osbahr, all the time believing from his attitude that the disagreement over the document signed by Melba Morris had been resolved.

13. Mr. Osbahr and I attempted to negotiate an acceptable price for new employee uniforms. He presented two bids to me, both of which were more than another vendor was offering, and both of which I rejected.

14. It was only after the 1995 contract with Mechanics Laundry expired and negotiations for a new contract had broken down that anyone from Mechanics Laundry Service told me that Mechanics Laundry Service was holding Morris Auto Glass to the document signed by Melba Morris.

15. After the 1995 contract with Mechanics Laundry Service expired, Morris Auto Glass continued to do business with Mechanics Laundry Service on a week to week basis, without a contract, until the new vendor could start supplying uniforms.

The Melba Morris affidavit states in pertinent part:

1. My name is Melba Morris. I am the store manager for the Union Avenue location of Auto Glass Company of Memphis d/b/a Jack Morris Auto Glass ("Morris Auto Glass").

2. As the Union Avenue store manager, my job is to handle the day to day operations of that store location, including signing invoices and service reports from vendors.

3. I know that I am not authorized to sign contracts binding Morris Auto Glass, and to my knowledge, I have never held myself out as someone who was authorized to sign contracts on behalf of the company.

4. I do not remember signing the Mechanics Laundry Service contract that is at issue in this lawsuit. I was not aware that I had signed a contract until John Morris (no relation), the president of Morris Auto Glass, told me that I had, in fact, signed a contract from Mechanics Laundry Service.

The determinative question in this case is whether the 1997 contract is binding on the Defendant which turns on whether Melba Morris had authority to execute the contract on behalf of the corporation. There is nothing in the record to indicate that Melba Morris had actual authority, and it is apparent that Plaintiff is relying upon her alleged apparent authority.

It is well settled that apparent authority must be established through the acts of the principal rather than those of the agent. *See Bells Banking Co. v. Jackson Centre*, 938 S.W.2d 421 (Tenn. Ct. App. 1996). In *Southern R. Co. v. Pickle*, 138 Tenn. 238, 197 S.W. 675 (1917), our Supreme Court said:

> "The apparent power of an agent is to be determined by the acts of the principal and not by the acts of the agent; a principal is responsible for the acts of an agent within his apparent authority only where the principal himself by his acts or conduct has clothed the agent with the appearance of authority, and not where the agent's own conduct has created the apparent authority. The liability of the principal is determined in any particular case, however, not merely by what was the apparent authority of the agent, but by what authority the third person, exercising reasonable care and prudence, was justified in believing that the principal had by his acts under the circumstances conferred upon his agent."

*Id.* at 246 (quoting 2 Corpus Juris 574, 575).

In *White v. Methodist Hospital S.*, 844 S.W.2d 642 (Tenn. Ct. App. 1992), this Court said:

> Apparent agency is essentially agency by estoppel; its creation and existence depend upon such conduct by the apparent principal as

will preclude him from denying another's agency. ***Kelly v. Cliff Pettit Motors, Inc.***, 191 Tenn. 390, 234 S.W.2d 822 (1950). Generally, to prove apparent agency one must establish (1) the principal actually or negligently acquiesced in another party's exercise of authority; (2) the third person had knowledge of the facts and a good faith belief that the apparent agent possessed such authority; and (3) the third person relied on this apparent authority to his or her detriment. ***Oppenheimer v. Wooline***, 4 Tenn. Civ. App. 134 (1834). See also ***Southern Railway Co. v. Pickle***, 138 Tenn. 238, 197 S.W. 675 (1917) and Am.Jur.2d *Agency*, §§ 19 and 80 (1986).

*Id.* at 646.

In the case at bar, it is undisputed that Melba Morris is a manager of one of Defendant's shops and is not an executive officer of the corporation. The only course of dealings between the Plaintiff and Defendant establishes that contracts are signed by the executive officers of the respective corporations. Both Melba Morris and John Morris, president of Defendant corporation, stated in their affidavits that Melba Morris had no authority to execute any such contract. On the other hand, affidavits in support of Plaintiff's motion for summary judgment make the bare conclusory statements that "Melba Morris . . . represented to us that she was the manager and had full authority to enter into any and all agreements. It was also represented to us by her superiors that she had full authority to enter into contracts." No other details are given as to any information acquired by Plaintiff or how it was disseminated by any particular means to anyone in the Plaintiff's organization. Tenn. R. Civ. P. 56.06 provides:

Supporting and opposing affidavits shall be made on personal knowledge, such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but his or her response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party. Expert opinion affidavits shall be governed by Tennessee Rule of Evidence 703.

Mere conclusory allegations will not suffice to support or defeat a motion for summary judgment. *See Davis v. Robbs*, 794 F.2d 1129 (6th Cir. Tenn. 1986).

In *Perryman v. Peterbilt of Knoxville, Inc.*, 708 S.W.2d 403 (Tenn. Ct. App. 1985), buyer of truck sued seller for alleged fraudulent misrepresentation and breach of warranty. Seller was granted a summary judgment, and buyer appealed. In response to the defendant's motion for summary judgment, the plaintiff filed an affidavit stating that the defendant's agent made "a material fraudulent misrepresentations and express warranties which were not true." This Court, in affirming the grant of summary judgment to seller, held that such statement failed to rise to the dignity of evidence to support the plaintiff's claim of fraudulent misrepresentation and express warranties. *Id.* at 406.

In the case at bar, the Plaintiff's affidavits state that "it was also represented to us [Mechanics] by her [Melba Morris] superiors that she had full authority to enter into contracts." This likewise does not rise to the dignity of evidence that would support Plaintiff's claim of apparent authority.

It is very clear from the record that the executive office of Defendant corporation had no knowledge of the signed contract until the president of the company started to attempt renegotiation of the 1995 contract expires in February 1998. When Mr. Morris learned of the 1997 alleged contract, he immediately notified Mr. Caen, the president of Plaintiff corporation, that this contract was signed without authority and he had just learned thereof. It is also undisputed that Mr. Caen immediately dispatched Mr. Osbahr to straighten the matter out, and Osbahr's assertion to Mr. Morris in their negotiations was that he was there to try to please Mr. Morris and not to discuss the 1997 alleged contract. At no time during the renegotiations for the expired 1995 contract did any of Plaintiff's representatives make any assertion that the 1997 contract was the correct contract and was in existence. This course of conduct strongly implies that Plaintiff knew that the 1997 contract was not a valid contract, and it was only after negotiations concerning the expired 1995 contract had reached an impasse that Plaintiff asserted that they were relying upon the 1997 contract. Moreover, there is no proof in the record whatsoever that anything was done by the Plaintiff in reliance upon the 1997 contract, and the record is totally devoid of any proof of detrimental reliance on behalf of Plaintiff.

Accordingly, the record establishes that Plaintiff is unable to prove essential elements of its claim. Therefore, the order of the trial court denying Defendant's motion for summary judgment and granting Plaintiff's motion for summary judgment is vacated. Summary judgment is granted to Defendant. The case is remanded to the trial court for such further proceedings as may be necessary. Costs of the appeal are assessed against the Plaintiff-Appellee, Mechanics Laundry Service.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.