IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 25, 2004

## SCOTT GREER, D/B/A A-1 SEPTIC TANK v. GEORGE WILLIS, ET AL.

Appeal from the Circuit Court for Wilson County
No. 12828      John D. Wootten, III, Judge

No. M2003-02508-COA-R3-CV - Filed June 24, 2004

This appeal involves an action for breach of an oral contract to pump out a swimming pool. The Circuit Court for Wilson County conducted a bench trial and awarded the plaintiff a judgment against both the owner of the pool and the affiliate real estate broker who requested the work. We have concluded that the evidence does not support the judgment against the property owner but affirm the judgment against the broker.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part and Reversed in Part**

WILLIAM C. KOCH, JR., P.J., M.S., PATRICIA J. COTTRELL, J., and FRANK G. CLEMENT, JR., J., delivered the opinion of the court.

Robert J. Notestine, III, Nashville, Tennessee, for the appellants, George Willis and AmSouth Bank.

Robert Evans Lee and James M. Lea, Jr., Lebanon, Tennessee, for the appellee, Scott Greer  d/b/a A-1 Septic Tank.

### MEMORANDUM OPINION[1]

### I.

AmSouth Bank acquired certain real property in Hartsville, Tennessee through a foreclosure sale. AmSouth subsequently hired George Willis, a licenced affiliate real estate broker, to list and

---

[1]Tenn. Ct. App. R. 10 provides:

The Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion, it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

sell the property. The property included a large swimming pool, and Mr. Willis was warned that the pool could become a breeding ground for mosquitos. Accordingly, Mr. Willis contacted Scott Greer, d/b/a A-1 Septic Tank, about pumping out the pool. Mr. Greer, who had never pumped out a pool before, agreed to pump out the pool even though he had not seen it and had no idea of its size. Mr. Greer testified that he told Mr. Willis the charge would be $175 per 1,000 gallons of water removed. Mr. Willis testified he did not receive a quote other than Mr. Greer's estimate that the job would cost several hundred dollars. Messrs. Willis and Greer did not execute a written contract.

After Mr. Greer began pumping out the pool, he called Mr. Willis to advise him it would take several additional loads to empty the pool. It eventually took twelve 2,300 gallon loads to empty the pool. Mr. Greer then presented Mr. Willis an invoice for $4,200.[2] Mr. Willis testified that, after he received the invoice, he advised Mr. Greer that he could not pay $4,200, that he was just the listing agent, and that he had no authority to incur more than $250 in expenses on AmSouth's behalf.

When neither AmSouth nor Mr. Willis paid the invoice, Mr. Greer filed a complaint against both of them in the Wilson County General Sessions Court. The case was removed to the Circuit Court for Wilson County where it was tried without a jury. The trial court found that the evidence preponderated in favor of the contentions of Mr. Greer and awarded him a judgment in the amount of $4,200 against AmSouth and Mr. Willis jointly and severally.

## II.

We review the trial court's findings of fact de novo with a presumption that they are correct. Tenn. R. App. P. 13(d); *Fell v. Rambo*, 36 S.W.3d 837, 846 (Tenn. Ct. App. 2000). We will reverse the trial court's findings only if we conclude, based on our own independent review of the record on appeal, that the evidence preponderates against them. *In re Estate of Walton*, 950 S.W.2d 956, 959-60 (Tenn. 1997); *B & G Constr., Inc. v. Polk*, 37 S.W.3d 462, 465 (Tenn. Ct. App. 2000). We will also accord great weight to findings that are based on a trial court's determination of the witnesses' credibility because it was the trial court, not this court, who observed the witnesses and had an opportunity to assess their credibility. *In re Estate of Walton*, 950 S.W.2d at 959; *Fell v. Rambo*, 36 S.W.3d at 846.

## III.

AmSouth and Mr. Willis first assert that there was no contract between the parties because there was no meeting of the minds as to the amount to be paid for Mr. Greer's services or even the degree of services. Mr. Willis's testimony differs significantly from that of Mr. Greer regarding the parties' initial conversation about the cost of draining the pool. Mr. Willis testified that Mr. Greer stated the job would cost only "several hundred dollars." Mr. Greer testified that he quoted $175 per

---

[2]We note that twelve 2,300 gallon loads at $175 per 1,000 gallons would result in a charge of $4,830 rather than $4,200. However, Mr. Greer only requested $4,200.

1,000 gallons. Mr. Greer also testified that, when he later told Mr. Willis it would take several more loads to finish the job, Mr. Willis stated "it had to be done." Moreover, the record reflects that Mr. Willis "ordered the work as he felt like the pool needed to be pumped to enable him to sell the property."

The trial court implicitly credited Mr. Greer's testimony, and we accord that decision great weight. After conducting an independent review of the record, we cannot conclude the evidence preponderates against the trial court's decision regarding the existence of a contract or the amount of the judgment.

**IV.**

AmSouth next contends that the trial court erred in awarding the plaintiff a judgment against it because there was no privity of contract between Mr. Greer and AmSouth, and Mr. Willis did not have the requisite authority to enter into the contract with Mr. Greer on AmSouth's behalf. There appears to be no dispute that Mr. Willis did not have the actual authority to enter into the contract with Mr. Greer on behalf of AmSouth and that he engaged Mr. Greer's services without the knowledge or consent of AmSouth. Mr. Greer contends, however, that Mr. Willis had the apparent authority to bind AmSouth. We have determined the evidence does not support the trial court's judgment against AmSouth.

Apparent authority is essentially agency by estoppel. *White v. Methodist Hospital S.*, 844 S.W.2d 642, 646 (Tenn. Ct. App. 1992). Its existence depends upon such conduct by the principal as would preclude the principal from denying another's agency. *Kelly v. Cliff Pettit Motors*, 191 Tenn. 390, 234 S.W.2d 822 (1950). The liability of the principal is determined in any particular case by what authority the third person, exercising reasonable care and prudence, was justified in believing that the principal had by his acts under the circumstances conferred upon his agent. *Southern Ry. Co. v. Pickle*, 138 Tenn. 238, 246, 197 S.W. 675, 677.

"It is well settled that apparent authority must be established through the acts of the principal rather than those of the agent." *Bells Banking Co. v. Jackson Centre, Inc.*, 938 S.W.2d 421, 425 (Tenn. Ct. App. 1996). A principal is responsible for the acts of an agent only where the principal himself by his acts or conduct has clothed the agent with the appearance of authority, and not where the agent's own conduct has created the apparent authority. *Mechanics Laundry Serv. v. Auto Glass Co. of Memphis*, 98 S.W.3d 151, 157 (Tenn. Ct. App. 2002). To prove apparent authority one must establish (1) the principal actually or negligently acquiesced in another party's exercise of authority; (2) the third person had knowledge of the facts and a good faith belief that the apparent agent possessed such authority; and (3) the third person relied on this apparent authority to his or her detriment. *Mechanics Laundry Service v. Auto Glass Co. of Memphis, Inc.*, 98 S.W.3d at 157.

Accordingly, to show that Mr. Willis had the apparent authority to enter into the contract with Mr. Greer on behalf of AmSouth, Mr. Greer must show that AmSouth actually or negligently acquiesced in Mr. Greer entering into the contract, that Mr. Greer had a reasonable, good faith belief

that Mr. Willis had such authority, and that Mr. Greer relied on Mr. Willis's authority to his detriment.  The record is devoid of any such evidence.  The record reveals only that AmSouth hired Mr. Willis to list and attempt to sell the property.  There is simply no evidence in the record that AmSouth took any action that clothed Mr. Willis with the appearance of authority to enter into the contract or that Mr. Greer had a reasonable, good faith belief that Mr. Willis had such authority.

## V.

We affirm the judgment against Mr. Willis in the amount of $4,200.  We reverse the judgment against AmSouth and remand the case to the trial court for further proceedings consistent with this opinion.  The costs are taxed one-half to Mr. Greer and one-half to Mr. Willis and his surety, for which execution may issue.

PER CURIAM