IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 20, 2010

SANDRA NEWMAN ET AL. v. RUBYE J. JARRELL ET AL.

Appeal from the Circuit Court for Rutherford County
No. 57145    Royce Taylor, Judge

No. M2010-00586-COA-R3-CV - Filed December 7, 2010

The plaintiffs were injured in a car accident in which their car collided with a stolen car. They sued the City of Murfreesboro and its police department, arguing that the stolen car was being pursued by the police immediately prior to the accident. The plaintiffs also sued the person who was using the car with its owner's permission prior to the theft, arguing that he had acted negligently in leaving the keys in the car. The trial court granted summary judgment in favor of all of the defendants. With respect to the city and its police department, we affirm. With respect to the user of the offending car prior to its theft, we reverse and remand.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part and Reversed and Remanded in Part

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

Kerry Knox and Thomas H. Castelli, Murfreesboro, Tennessee, for the appellants, Sandra Newman, Tim Newman, and Alyssa Christy-Millet, a minor b/n/f Laura Millet.

Steven A. Dix, Murfreesboro, Tennessee, for the appellees, Rubye J. Jarrell and Joseph D. Ash, Jr.

Richard W. Rucker, Adam Ford Tucker, and Susan Emery McGannon, Murfreesboro, Tennessee, for the appellees, Murfreesboro, Tennessee, Police Department and the City of Murfreeboro, Tennessee.

# OPINION

## FACTUAL AND PROCEDURAL BACKGROUND

On May 18, 2007, Sandra Newman was driving her car along a street in Murfreesboro; her granddaughter Brianna Gortney and Brianna's friend Alyssa Christy-Millett were passengers. Ms. Newman's car, a 1994 Dodge Spirit, was struck by a 1995 Mercury Grand Marquis registered to Rubye Jarrell. The Grand Marquis had been stolen earlier that day and at the time of the collision was driven by an unknown driver. Shortly before the accident, Murfreesboro police officers had attempted to stop the Grand Marquis due to its excessive speed, but the Grand Marquis failed to stop.

This lawsuit was filed on May 14, 2008 by Ms. Newman, her husband, and Laura Millett on behalf of her daughter Alyssa Christy-Millett. The defendants included Ms. Jarrell, John Doe (the unknown driver), the Murfreesboro Police Department, and the City of Murfreesboro. The original complaint states causes of action for negligence and negligence per se, negligent entrustment, joint and several liability under respondeat superior, and loss of society and consortium. In an amended complaint filed in November 2008, the plaintiffs added as a defendant Joseph D. Ash, Jr., Ms. Jarrell's grandson. The plaintiffs asserted that Mr. Ash was liable under theories of respondeat superior and negligent entrustment because immediately prior to the time of the accident, he was operating Ms. Jarrell's car with her consent and knowledge and left the car unattended and unlocked with the keys in the ignition. The parties proceeded to engage in discovery.

In September 2009, the City of Murfreesboro and the police department filed a motion for summary judgment on all claims against them for negligence and negligence per se. In support of this motion, they filed the affidavits of Officers Tracy Renee Womack and Christopher Shawn Haney. Prior to the accident, these officers were patrolling in an unmarked car and encountered the Grand Marquis travelling at an excessive speed. They gave the same account of the events leading up to the accident. In his affidavit, Officer Haney stated:

> At approximately [4:45 p.m. Officer Womack and I] observed a 1995 white Mercury Grand Marquis pass by us at a high rate of speed. Officer Womack and I pulled out behind the Grand Marquis, which stopped at the stop sign on Azure Way where it intersects with Cason Trail. While stopped behind the vehicle, I observed the passengers in the vehicle, which appeared to be four to five African-American young boys, throw personal effects such as computerized discs and small personal objects out of the vehicle onto the

ground. At that time, Officer Womack and I activated the emergency lights and siren in our car.

The 1995 white Mercury Grand Marquis pulled across the intersection of Cason Trail and traveled a short distance further on Azure Way. Officer Womack and I followed the vehicle across Cason Trail on Azure Way. The vehicle turned left off of Azure Way into a small parking area used by Cason Lane Academy for student drop-off and pick-up. Officer Womack and I followed the vehicle into the parking area. The vehicle did not stop as expected; rather, once in the parking area it accelerated and pulled onto Cason Trail going east. The 1995 white Mercury Grand Marquis drove off east down Cason Trail at an accelerating rate of speed. Officer Womack and I stopped our vehicle and powered off the emergency lights and siren. We sat stationary as we watched the 1995 white Mercury Grand Marquis flee from our attempt to pull it over. . . . After we had lost sight of the vehicle, Officer Womack and I drove in the unmarked Nissan Maxima at a normal rate of speed east along Cason Trail and turned right onto Cason Lane heading south towards New Salem Highway.

Also submitted with the City's motion for summary judgment were the following affidavits and deposition excerpts:

-Affidavit of Cary Gensemer, supervising officer for Officers Womack and Haney in the crime suppression unit. Officer Womack contacted Sergeant Gensemer to tell him that she believed a car she and her partner had "attempted to stop had later been involved in an accident." Based upon the information provided by these two officers, Sergeant Gensemer determined that "no pursuit occurred in this case."

-Affidavit of James H. Wyatt, the supervising officer for the west side of Murfreesboro at the time of the accident. From discussions with Sergeant Gensemer and Officer Womack, Officer Wyatt determined that "no pursuit occurred in this case."

-Affidavit of Justin John Lemanski, the first police officer at the scene of the accident; he prepared the accident report.

-Excerpt of deposition of Georgia Meshotto, a witness to the accident.

-Excerpt of deposition of Joseph Vernon Mandeville, a witness to the accident.

In October 2009, Ms. Jarrell and Mr. Ash filed a motion for summary judgment asserting that "the intervening, unforeseen criminal acts of four (4) John Doe perpetrators constitute the sole and proximate cause of the accident and injuries to the Plaintiffs in this case." Ms. Jarrell and Mr. Ash submitted their affidavits. In his affidavit, Mr. Ash stated: "I know I did not leave the keys I was using in the ignition because I had them with me at the time and after the wreck." In responding to the plaintiffs' statement of undisputed facts, Mr. Ash admitted for purposes of the motion for summary judgment that he "left a set of keys in the car." Mr. Ash further admitted that he had acknowledged to Officer Price and to Ms. Jarrell that he had left the keys in the vehicle.

The plaintiffs filed responses in opposition to the defendants' motions for summary judgment. They submitted an affidavit from Brad Corcoran, a professional investigator and a teacher of police procedure, who opined that "Officers Womack and Haney entered into a pursuit of the suspect vehicle." Based upon his review of the transcripts of the depositions of Officers Womack and Haney and his investigation of the area, Mr. Corcoran stated that "it appears that Officer Haney [the driver] attempted to 'parallel' the suspect vehicle by turning onto Cason Lane . . . [a] police pursuit tactic to intercept a fleeing vehicle at the next intersection." The parties responded to one another's statements of undisputed material facts.

After a hearing, the trial court granted the defendants' motions for summary judgment and, since the defendant John Doe had not been identified, dismissed the plaintiffs' case in its entirety. In its order, the court included the following pertinent conclusions:

> The Defendant, Murfreesboro, Tennessee Police Department, has successfully negated essential elements of Plaintiffs' negligence claim, in that Defendant, Murfreesboro, Tennessee Police Department, did not breach its duty owed to the Plaintiffs nor was it the direct and proximate cause of Plaintiffs' injuries;
>
> The Defendant, Murfreesboro, Tennessee Police Department, has successfully negated essential elements of Plaintiffs' negligence per se claim, in that Defendant, Murfreesboro, Tennessee Police Department, did not violate any statute or ordinance;
>
> The Defendants, Rubye J. Jarrell and Joseph D. Ash, Jr., have successfully negated Plaintiffs' negligence and negligence per se claim, in that Defendant John Doe's negligence and negligence per se is not imputed to Defendants Rubye J. Jarrell and Joseph D. Ash, Jr. by the doctrine of respondeat superior;
>
> The Defendant, Joseph D. Ash, Jr., has successfully negated Plaintiffs'

negligence claim, in that there are no facts in the record to show that Defendant, Joseph D. Ash, Jr., was the proximate cause of Plaintiffs' injuries.

The plaintiffs have appealed the trial court's grant of summary judgment with respect to the City of Murfreesboro, the police department, and Mr. Ash.[1]  With respect to the claims against the City and the police department, the plaintiffs argue that the trial court erred in granting summary judgment on the issues of whether the defendants breached their duty of care and whether the defendants' negligence was the proximate cause of the plaintiffs' injuries.  With respect to the claims against Mr. Ash, the plaintiffs argue that summary judgment was not properly granted on the issues of whether Mr. Ash was negligent in leaving the car unattended with the keys in the vehicle and whether his negligence was the proximate cause of the plaintiffs' injuries.

STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04. Summary judgments do not enjoy a presumption of correctness on appeal. *BellSouth Adver. & Publ'g Co. v. Johnson,* 100 S.W.3d 202, 205 (Tenn. 2003).  We consider the evidence in the light most favorable to the non-moving party and resolve all inferences in that party's favor.  *Godfrey v. Ruiz,* 90 S.W.3d 692, 695 (Tenn. 2002).  When reviewing the evidence, we must determine whether factual disputes exist.  *Byrd v. Hall,* 847 S.W.2d 208, 211 (Tenn. 1993).  If a factual dispute exists, we must determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial.  *Id.; Rutherford v. Polar Tank Trailer, Inc.,* 978 S.W.2d 102, 104 (Tenn. Ct. App. 1998).  To shift the burden of production to the nonmoving party who bears the burden of proof at trial, the moving party must negate an element of the opposing party's claim or "show that the nonmoving party cannot prove an essential element of the claim at trial." *Hannan v. Alltel Publ'g Co.,* 270 S.W.3d 1, 8-9 (Tenn. 2008).

ANALYSIS

City of Murfreesboro and Police Department

The plaintiffs assert on appeal that the trial court erred in granting summary judgment in favor of the defendants and argue that "the City and its agents were negligent in pursuit."

---

[1]The appellants have not raised any issues on appeal as to the trial court's grant of summary judgment on the claims against Ms. Jarrell.

While governmental entities are generally immune from suit for personal injuries and property damage, certain statutory provisions create exceptions to this immunity. *Smith v. Cherry*, No. M2005-01168-COA-R3-CV, 2006 WL 1724629, at *3 (Tenn. Ct. App. June 22, 2006). For purposes of this case, Tenn. Code Ann. § 55-8-108 is the operative statute. Tenn. Code Ann. § 55-8-108(e) provides:

> Notwithstanding the requirement of this section that drivers of authorized emergency vehicles exercise due regard for the safety of all persons, no municipality or county nor the state or any of its political subdivisions, nor their officers or employees, shall be liable for any injury proximately or indirectly caused to an actual or suspected violator of a law or ordinance who is fleeing pursuit by law enforcement personnel. The fact that law enforcement personnel pursue an actual or suspected violator of a law or ordinance who flees from pursuit shall not render the law enforcement personnel, or the employers of the law enforcement personnel, liable for injuries to a third party proximately caused by the fleeing party *unless the conduct of the law enforcement personnel was negligent and that negligence was a proximate cause of the injuries to the third party.*

(Emphasis added). In *Haynes v. Hamilton County*, 883 S.W.2d 606, 610 (Tenn. 1994), our Supreme Court overruled prior caselaw to hold that negligent "conduct" within the meaning of Tenn. Code Ann. § 55-8-108(e) "includes the decision to commence or continue a high speed chase when a reasonable police officer would not do so."

The plaintiffs' theory of negligence against the City and its employees is based upon the premise that the police officers engaged in pursuit of the Grand Marquis.[2] If there was no pursuit, then the defendants could not have been negligent in initiating or continuing the pursuit. In support of their motion for summary judgment, the City and the police department presented affidavits from the two officers in the car behind the Grand Marquis to the effect that, once the Grand Marquis accelerated and turned onto Cason Trail, the officers deactivated their emergency sirens and lights and stopped their car in the access road. The officers also testified that, from the time they first saw the Grand Marquis on Azure Way, they did not drive at a high rate of speed. Sergeant Gensemer and Sergeant Wyatt testified by affidavit that no pursuit had occurred.

To shift the burden of production to the plaintiffs, the City and the police department had to negate an element of the plaintiffs' claim or "show that the nonmoving party cannot

---

[2]Although the plaintiffs' complaint also includes allegations with respect to the manner in which the police officers operated their vehicle, those allegations are not addressed on appeal.

prove an essential element of the claim at trial." *Hannan,* 270 S.W.3d at 8-9. We conclude that the affidavits submitted by the defendants successfully negated the element of breach of duty by tending to disprove that the police officers engaged in a pursuit.

Once the moving party has shifted the burden of production, the nonmoving party must "produce evidence of specific facts establishing that genuine issues of material fact exist." *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008). To meet this burden, the plaintiffs rely on several pieces of evidence. They argue that, under the City's pursuit policy, Officers Womack and Haney engaged in a pursuit. The police department policy defined "pursuit" as:

> the act of following a motor vehicle in a Departmental vehicle after the officer has directed the vehicle to pull over and stop by audible and visible commands (emergency lights and siren) and it is obvious that the driver is aware of the command, has had an opportunity to safely stop, and does not intend to do so. Because road and traffic conditions vary, there is no specific distance or standard period of time when an attempt to stop a vehicle becomes a pursuit. A pursuit exists when the conditions have been met, whether or not the vehicle being pursued or the Departmental vehicle is exceeding the applicable speed limit.[3]

Under the undisputed facts, however, Officers Womack and Haney did not have reason to realize that the Grand Marquis was not going to pull over until the car sped out of the access road onto Cason Trail.

> The plaintiffs point to the following deposition testimony by Sergeant Gensemer:
> A. [Officer Lemanski, the officer preparing the accident report] said, How should I mark that? I said, Well, you should mark, no, there was no police pursuit involved. Because after questioning Officer Womack and Officer Haney, I determined that they did, indeed, not pursue the vehicle.
>
> Q. Okay. Specifically, tell me, what questions did you ask Officers Haney and Womack to determine that there was not a pursuit?

---

[3]The policy went on to set out the only conditions under which pursuit is appropriate:

Pursuit is appropriate when the officer has probable cause to believe that the person being pursued has or will commit a violent felony, or the person has seriously injured another person, or the person poses a great risk of serious bodily injury or death to innocent parties, and other opportunities to apprehend the person are not believed to exist.

A. I don't remember, specifically. But I can tell you generally what I ask in the situation.

Q. Okay, that's fine.

A. At the time that you realize that that vehicle was abating [sic] you, did you discontinue? And they said, yes, they discontinued *as soon as they realized that the vehicle was not intentionally fleeing them.*

(Emphasis added). The italicized phrase, relied upon by the plaintiffs, appears to be a misstatement or a mistranscription since Sergeant Gensemer's conclusion, that there was no pursuit, would be premised on evidence that the officers had discontinued following the car as soon as they realized that it *was* intentionally fleeing from them. Earlier in his deposition testimony, in describing the chain of events related to him by Officers Womack and Haney, Sergeant Gensemer stated: "And the vehicle fled from them." Contrary to the plaintiffs' position, Sergeant Gensemer's testimony contains no real ambiguity as to the officers' actions and the conclusion to be drawn therefrom: that there was no pursuit.

The plaintiffs also cite deposition testimony from Officer Price that she had seen the Grand Marquis approximately 30 to 45 minutes prior to the accident and had been playing "cat and mouse" with the car. Officer Price stated that she would pull in behind the car and it would go in another direction, suggesting to the officer that the car was intentionally trying to elude her. In her testimony, Officer Price stated that she had relayed this information to Officers Womack and Haney and suggested that they try to get a license number if they saw the car. According to the plaintiffs' argument, this testimony demonstrates that "law enforcement knew that the suspect vehicle did not want to be apprehended by law enforcement" and "by pursuing it for the stated purpose of speeding or reckless endangerment, Officers Womack and Haney breached a duty of care to Mrs. Newman." This reasoning assumes, however, that Officers Womack and Haney pursued the Grand Marquis, an assumption not supported by the evidence. When the Grand Marquis sped away, Officers Womack and Haney stopped following it.

In arguing that Officers Womack and Haney did engage in a pursuit, the plaintiffs point to the testimony of two witnesses. Ms. Meshotto, who was driving behind the plaintiffs and witnessed the collision, testified that either a 911 operator or a police officer at the scene, she could not remember which, told her that the police "had been in pursuit of [the Grand Marquis] but they had stopped the pursuit." Under Tenn. R. Civ. P. 56.06, affidavits are to be "made on personal knowledge" and "set forth such facts as would be admissible in evidence." Hearsay statements, such as those relied upon by the plaintiffs in Ms. Meshotto's deposition testimony, do not satisfy Tenn. R. Civ. P. 56.06 for purposes of establishing the

presence of genuine issues of material fact for trial.[4]  *Byrd v. Hall*, 847 S.W.2d 208, 215-16 (Tenn. 1993); *Sewell v. Par Cable, Inc.*, No. 87-266-II, 1988 WL 112915, at *5 (Tenn. Ct. App. Oct. 26, 1988).

The second witness cited by the plaintiffs is Mr. Mandeville, who was present at the intersection when the collision occurred.  The plaintiffs rely upon testimony by Mr. Mandeville that, a few minutes after the collision, two uniformed officers who were travelling "pretty fast" stopped and asked him which way the suspects, the four unknown persons in the Grand Marquis who fled on foot after the accident, had gone.  Mr. Mandeville also testified, however, that these officers were driving a black or dark blue Grand Am with its lights and sirens activated.  It is undisputed that Officers Womack and Haney were driving in an unmarked beige Nissan Maxima.  Thus, the officers who asked Mr. Mandeville to tell them which way the suspects had run were not Officers Womack and Haney, and Mr. Mandeville's testimony does not support the plaintiffs' theory that Officers Womack and Haney were pursuing the Grand Marquis prior to the accident.

In opposing the City's motion for summary judgment, the plaintiffs submitted an expert affidavit from Brad Corcoran, an investigator and teacher of police procedure.  Mr. Corcoran stated that he reviewed the police department's pursuit policy, various depositions, accident reports and evidence from the police department, and conducted his own investigation of the accident site.  Mr. Corcoran then opined as follows:

> Using the Murfreesboro Police Department's definition of pursuit, it is my opinion that Officers Womack and Haney entered into a pursuit of the suspect vehicle.

> From my review of the deposition transcripts of Officers Womack and Haney and area [sic], it appears that Officer Haney attempted to "parallel" the suspect vehicle by turning onto Cason Lane, headed toward New Salem Road.  A police pursuit tactic to intercept a fleeing vehicle at the next intersection.

The plaintiffs argue that Mr. Corcoran's affidavit explains the action of Officers Womack and Haney in turning onto Cason Lane instead of going straight on Cason Trail behind the Grand Marquis.  Cason Lane runs perpendicular to Cason Trail.  New Salem Road runs parallel to Cason Trail.

The plaintiffs point out that the trial court made no mention of Mr. Corcoran's affidavit in its order.  We do not consider the trial court's omission to be an error, however,

---

[4]Even if admissible, we would not consider the statement sufficient to create a factual dispute.

because Mr. Corcoran's affidavit does not "set forth specific facts showing that there is a genuine issue for trial," as required by Tenn. R. Civ. P. 56.06. Mr. Corcoran fails to cite any facts to support his theory that the officers "appear" to have been paralleling the Grand Marquis. The affidavit contains only Mr. Corcoran's conclusory opinions and speculation and, therefore, is not sufficient to show that there are genuine issues of fact for trial. *See Barna v. Preston Law Group, P.C.*, No. M2008-02560-COA-R3-CV, 2009 WL 2616038, at *6 (Tenn. Ct. App. Aug. 25, 2009); *Mechs. Laundry Serv. v. Auto Glass Co. of Memphis, Inc.*, 98 S.W.3d 151, 158 (Tenn. Ct. App. 2002).

In the absence of evidence to show a genuine issue for trial, the trial court properly granted summary judgment in favor of the City and its police department.

<u>Joseph Ash</u>

The plaintiffs assert that the trial court erred in granting summary judgment on their negligence claim against Joseph Ash. The trial court ruled that Mr. Ash "successfully negated Plaintiffs' negligence claim, in that there are no facts in the record to show that Defendant, Joseph D. Ash, Jr., was the proximate cause of Plaintiffs' injuries."

For purposes of Mr. Ash's motion for summary judgment, we view the facts in the light most favorable to the plaintiffs. We will therefore assume that Mr. Ash left a key to the Grand Marquis in the car, but not in the ignition, when he parked the car at his mother's house. This factual assumption is consistent with Mr. Ash's response to the plaintiffs' additional statement of undisputed material facts, his deposition testimony, and his affidavit. At the accident scene, Mr. Ash retrieved his keys from the floor board of the car.

The trial court based its decision to grant Mr. Ash's motion for summary judgment on the Supreme Court's decision in *McClenahan v. Cooley*, 806 S.W.2d 767 (Tenn. 1991). We agree with the trial court's focus on *McClenahan* but disagree that the factual distinction between the two cases is necessarily dispositive here. In *McClenahan*, the defendant drove his car to a bank located in the parking lot of a shopping center. *Id.* at 769. He left the keys in the ignition of the car while he went into the bank. *Id.* While the defendant was in the bank, a thief took his car and drove it away. *Id.* The police chased the thief at high speed. *Id.* After running a red light at high speed, the thief crashed into another car, killing the plaintiff's wife and two children and injuring another child. *Id.* The trial court granted the defendant car owner's motion for judgment on the pleadings. *Id.* at 770. The issue before the Court was whether the jury should be allowed to determine the issues of proximate cause and intervening cause. *Id.*

The Supreme Court reviewed prior key-in-ignition caselaw and found that the results turned upon the applicability of Tenn. Code Ann. § 55-8-162(a), which states:

> No person driving or in charge of a motor vehicle shall permit it to stand unattended without first stopping the engine, locking the ignition, and effectively setting the brake thereon and, when standing upon any grade, turning the front wheels to the curb or side of the highway.

This provision was interpreted as applying only to highways. *Id.* at 772. In cases involving keys in the ignition, the liability of the owner depended upon whether the vehicle was left unattended on private property or on public property:

> If the vehicle is left on private property (i.e. public parking lots), T.C.A. § 55-8-162 does not apply and the vehicle owner is entitled to judgment as a matter of law. If the vehicle is left on public property, such as alongside of a road, the case goes to the jury because the statute applies.

*Id.* The Court questioned the justification for this private/public property distinction embedded in prior cases but determined that it need not decide this question in order to decide the case before it. *Id.* at 772-73. The Court went on to analyze the case under common law negligence rather than negligence per se (based upon a violation of Tenn. Code Ann. § 55-8-162(a)).

> After reviewing caselaw from other jurisdictions, the Court adopted the following approach:

> Leaving a key in the ignition of an unattended automobile in an area where the public has access, be it public or private property, could be found by a reasonable jury to be negligent, whether or not a prohibitory statute is involved.

*Id.* at 776. As to proximate cause, the Court set out a three-pronged test:

> (1) the tortfeasor's conduct must have been a "substantial factor" in bringing about the harm being complained of; and (2) there is no rule or policy that should relieve the wrongdoer from liability because of the manner in which the negligence has resulted in the harm; and (3) the harm giving rise to the action could have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence.

*Id.* at 775. Proximate cause and superseding intervening cause are both jury questions, except in cases where, under the undisputed facts and inferences therefrom, "all reasonable persons must agree on the proper outcome." *Id.* Both proximate cause and superseding intervening cause involve the issue of foreseeability. *Id.* at 775-76.

Addressing the case before it, the Court in *McClenahan* concluded that reasonable minds could differ as to the reasonableness of the car owner's actions and the foreseeability of the theft and the resulting harm. *Id.* at 776. In reversing the trial court's decision, the Court stated that determinations regarding the liability of the car owner depend upon "the entire circumstantial spectrum." *Id.* The Court listed the following as circumstances to be considered:

> [T]he position of the vehicle and the nature of the locality in which the vehicle is left, the extent of access thereto, operational condition of the vehicle, its proximity to surveillance, the time of day or night the vehicle is left unattended, and the length of time (and distance) elapsing from the theft to the accident.

*Id.*

How do the principles established in *McClenahan* apply to the case at hand? The trial court reasoned that *McClenahan* did not apply because this case does not involve keys left in the ignition. We must respectfully disagree. The rationale of *McClenahan* would seem equally applicable in any case in which car keys are left in plain sight. We see no meaningful distinction between a situation in which keys are left in the ignition and a situation in which they are left on the front seat or on the dash board in plain view.

In the present case, material facts are in dispute, including the location of the keys left in the car by Mr. Ash and whether they were hidden from view. Likewise, we do not know whether the car was parked in Mr. Ash's mother's driveway or on the street in front of her house. The fact that the car was parked in a residential area seems to weigh against the foreseeability of the theft, but there is evidence indicating that a neighbor's car had been stolen recently and that this was considered a high crime area. Furthermore, we do not know whether Mr. Ash's car was locked or whether he left the windows rolled down. The theft occurred sometime between 3:00 p.m. and the time of the car accident; the police report states that the accident was called in at 4:53 p.m.

We conclude that the trial court erred in deciding the case against Mr. Ash at the summary judgment stage.

CONCLUSION

We affirm the judgment of the trial court with respect to the City of Murfreesboro and its police department. We reverse the trial court's judgment with respect to Mr. Ash and remand for further proceedings consistent with this opinion. Costs of appeal are assessed one-half against the plaintiffs and one-half against Mr. Ash.

_____
ANDY D. BENNETT, JUDGE