# BERNARD v. REAVES et al.—178 S. W. (2d) 224.

Eastern Section.   September 10, 1943.

Both Certioraris denied by Supreme Court, February 5, 1944.

Simmonds & Bowman, of Johnson City, and Frank M. Berry, of Greeneville, for complainant appellant.

Conway Maupin, Kilgo & Armstrong, and Milligan & Haynes, all of Greeneville, for defendants appellees.

HALE, J. This suit was brought to recover damages for alleged breach of contract to finance a partnership, in which complainant and defendants were members, for the operation of a tobacco warehouse, and for the allegedly wrongful dissolution of such partnership. The Chancellor dismissed the bill and the complainant appealed and now assigns error. We shall speak of the parties in the positions they occupied below.

The bill was filed April 17, 1940, by W. W. Bernard against W. H. Reaves, J. C. Vann, J. S. Bernard and Park Bernard. The latter, the son of complainant, was never brought before the court.. At the hearing the complainant conceded he was not entitled to any relief against the defendants J. S. Bernard and J. C. Vann and the suit as to them was dismissed.

The theory of the bill is that a partnership composed of W. W. Bernard, J. S. Bernard, Park Bernard, J. C. Vann and W. G. Vann was operating a tobacco warehouse in Knoxville purchased from Planter's Warehouse, Inc.; that such partnership was handicapped by a lack of credit and that, in 1930, it was agreed that W. G. Vann was to withdraw therefrom and be succeeded by W. H. Reaves who was to render financial assistance to the partnership. The deed from the Planter's Warehouse,

Inc., to the original partnership had been signed and acknowledged but not delivered. After the partnership was changed by the withdrawal of Vann and the admission of Reaves, the deed was spoliated by striking the name of Vann and inserting the name of Reaves. This was done by complainant while the deed was temporarily in his possession and without the knowledge of Mr. Reaves. As before pointed out, the deed was retained by the grantor. The bill avers that the agreement to furnish financial assistance was breached by Reaves, in consequence of which an instalment due in February, 1935, on the warehouse was in default and the property "reverted" to the Planter's Warehouse. The bill shows, however, that Mr. Reaves had advanced a sum sufficient to "tide the business over" for the first year's operation. The bill also charged that Reaves wrongfully terminated the partnership and took possession of and sold its personal property and applied the proceeds to the discharge of partnership liabilities. It is also averred that in anticipation of Reaves performing his agreement the other partners sold him stock representing a one-fourth interest in a corporation owned by them and operating a warehouse at Abingdon, Va., and which purchase was alleged to be greatly to his interest.

On June 10, 1940, Mr. Reaves filed a plea in abatement averring the business operations were not carried on as a partnership but by a corporation known as "Bernards of Knoxville, Inc." No steps were taken to test the sufficiency of or join issue on this plea but an amendment to the bill was filed on June 28, 1940, in which it is charged that the deed from the Planter's Warehouse, Inc., was "retained for the convenience of the grantor, altho . . . delivered in a legal sense and title to the

property was vested in the respective partners.'' It is then charged that in July, 1934, a corporation was formed to engage in the general warehouse business; that it never acquired title to the aforesaid real estate and that the partnership relations of the parties were unaffected thereby; that the corporation was formed at the instance of Reaves, ''but there was never any suggestion, intimation, agreement, or understanding to the effect that by the formation of said corporation the defendant Reaves would be relieved or discharged from his express agreement to render financial assistance to the business when needed to enable the partners to finish payment for said real estate. On the contrary, it was expressly understood and agreed that the defendant Reaves would, in accordance with his prior agreement, continue to render such reasonable financial assistance as may be required.'' That the defendant Reaves by false statements undermined the confidence of the other partners; that at the end of the 1934-1935 season Reaves stated he would have nothing more to do with the business so that the real estate would be forced to revert to the grantor; that Mr. Reaves desired to destroy that business in order that a competing warehouse at Morristown, in which he was largely interested, would profit thereby; that the corporation never acquired title to the partnership assets or assumed liability for the real estate, so that the partnership continued to hold the assets as partners, and that the loss sustained was by the partnership and not the corporation. This was sworn to by Mr. Bernard.

The complainant and the defendant Reaves gave their depositions on the issues raised by the plea in abatement, fully setting forth their respective contentions. After a hearing of this plea and the depositions thereon the plea

was overruled. A demurrer was then filed and overruled. The action of the court on these matters is not questioned.

The defendant Reaves answered, admitting he was taken in as a member of the partnership, but asserting he was not to finance the entire partnership or the other four members in their individual ventures; that no time was set for the existence of the partnership; that Park Bernard used said partnership assets for his personal advantage by and with the consent of his father, the complainant; that defendant, did render financial aid over and above his one-fifth interest and but for his help the business would not have been enabled to operate as long as it did; that he became alarmed over the condition of the business and to avoid any liability as a partner he voiced his fears to some of the partners and thereafter the corporation was formed and operated the business. The answer goes into great detail as to the various transactions between the parties and denies any liability to the complainant. By amendment it was pleaded that complainant was guilty of laches; that the alleged promise fell within the Statute of Frauds in that it involved a parol agreement (a) not to be performed within one year; and (b) to answer for debt, default or miscarriage of another; and, further, that any cause of action was barred by the Statute of Limitation of six years.

The complainant gave his deposition on July 23, 1941, in the presence of the defendant Reaves and his solicitors, but it was not filed until October 31st, following. Certain exhibits thereto were not filed until the following February. Mr. Reaves died November 16, 1941, and it is shown that for nearly a month prior thereto his physical condition was such he was unable to attend to his business

affairs. The cause was revived against his personal representatives. The deposition of Park Bernard was taken by the complainant, his father. The deposition of J. S. Bernard was given in his own behalf, but was offered in evidence by complainant. At the hearing the Chancellor sustained objections to the testimony of the complainant and of Park Bernard and J. S. Bernard as related to conversations and transactions had between them and defendant Reaves. Our statute is:

"In actions or proceedings by or against executors, administrators, or guardians, in which judgments may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate, or ward, unless called to testify thereto by the opposite party," Code, Sec. 9780.

In the case of Beaty v. McCorkle, 58 Tenn. 593, decided in 1872, the Supreme Court, speaking through Deaderick, J., said: ". . . a deposition of a party, taken in the life-time of the adverse party, but not offered in evidence until after his death, can not be read as evidence against his personal representatives." It seems to us this case is unsound in principle; that it penalizes diligence and puts a premium on inertia. Its authority has been greatly weakened if not destroyed by the opinion of Judge Deaderick in McDonald v. Allen, 1874, 67 Tenn. 446, wherein it is said:

"The deposition of testator (complainant) was taken and filed before his death, giving his statement of the transaction, and the surviving parties were competent to give and have given their version of the transaction, so that the reasons for the exclusion of their testimony does not exist. It was, therefore, not erroneous to allow the

depositions of testator and of defendants to be read upon the hearing.''

And Judge Turney, in the case of Bingham v. Lavender, 70 Tenn. 48, decided in 1878, said:

''In this case the complainant did testify on the issues made; he had all the rights the law could bestow. At his death, his testimony in the form of deposition was a part of the record in the cause, and through it he spoke in his own behalf as a witness as effectually as if he had been living. The advantage of the living over the dead intended to be guarded against by the statute, does not obtain in this case, nor was a case like the present contemplated in the passage of the law. *Lavender was a competent witness under the circumstances.* (Emphasis supplied.)

After Judge Lurton went on the U. S. Circuit Court of Appeals, Sixth Circuit, he had before him substantially the same question as that now before us, but arose under the Ohio statute which has the same general purpose as Code, Sec. 9780, supra. In that case he admitted the deposition and held the competency of the witness should be tested as of the time the evidence was taken, citing Bingham v. Lavender, and McDonald v. Allen, supra, as sustaining that position. McMullen v. Ritchie, C. C., 64 F. 253.

In Corpus Juris it is said:

''Under some statutes a person who expects to rely on his own testimony or on the testimony of another interested witness, with reference to a personal transaction or communication with an adverse party, whose possible death or incompetency is anticipated, may cause his own deposition or the deposition of such other witness to be taken while the adverse party is still alive and

sane, and such deposition may be used, although at the time of the trial his adversary is deceased or insane. . . . A deposition of the surviving party taken before, but offered in evidence after, the death of the other party has been held admissible." 70 C. J., Witnesses, Sec. 474, page 355.

Several cases from different States are cited to sustain this statement. Among them is Neis v. Farquharson, 9 Wash. 508, 37 P. 697, 699, in which it is said:

"The statutory prohibition is to testifying under certain specified circumstances; and it makes the time of testifying the test of competency, rather than the time of the hearing. If at that time the witness is competent, the prohibition does not apply."

In American Jurisprudence it is said:

"In the consideration of the admissibility of a deposition as affected by a subsequently accruing incompetency or disqualification of the deponent, a distinction is to be made between depositions taken in regular course in equity and those taken de bene esse. Due to the fact that depositions in equity are ordinarily considered as introduced in evidence when taken, the general rule is that in such cases the competency of the witness as of that time governs. In the case of depositions taken de bene esse, there is some conflict among the authorities dealing with the question. . . .

"The same conflict is observable in the cases dealing with the effect of the deponent subsequently becoming incompetent by reason of the death of the adverse party, under statutes rendering a party incompetent to testify as a witness in his own behalf. Many courts hold that in such case the deposition is inadmissible, while others

take the contrary view." 16 Am. Jur., Depositions, Sec. 131, pp. 755, 756.

The cases for and against the admissibility of such proof are to be found in Hewlett v. George, 68 Miss. 703, 9 So. 885, 13 L. R. A. 682; Greenlee v. Mosnat, 136 Iowa 639, 111 N. W. 996, 14 L. R. A. (N. S.), 488; 21 Ann. Cas. 1265; Beaston v. Portland Trust & Savings Bank, 89 Wash. 627, 155 P. 162, Ann. Cas. 1917B, 490.

In Ruling Case Law it is said:

"Generally speaking, the competency of a witness is determined as of the date he is offered. The testimony which he has given, if he is then competent, is not affected by the subsequent death of his adversary." 28 R. C. L., Witnesses, Sec. 89, p. 503.

█ Our courts have "repeatedly held that the statute is to be strictly construed as against the exclusion of testimony and cannot be extended to cases beyond its terms upon the idea that they fall within the evil intended to be guarded against. Hughlett v. Conner, 59 Tenn. (12 Heisk.), 83; Rielly v. English, 77 Tenn. (9 Lea), 16; Savage v. Savage, 4 Tenn. App. 277." Kurn v. Weaver, 25 Tenn. App. 556, 161 S. W. (2d) 1005, 1020.

██ In the light of reason, and under the authorities hereinbefore set forth, we think Beaty v. McCorkle, supra, has been overruled by necessary implication. It follows that the Chancellor erroneously excluded the testimony of complainant. Likewise we think the Court erroneously excluded the testimony of Park Bernard and J. S. Bernard offered by the complainant. Suit as to them had been dismissed. No judgment could have been rendered "for or against" them. The order of dismissal recites the complainant "concedes that no recovery" could be had against them. They sought no affirmative relief.

The statute contemplates those cases "wherein judgment may be rendered for the representative party and against the proposed witness, or vice versa. It does not comprehend a case wherein no judgment could be rendered either for or against the one called upon to testify, even though a judgment might be rendered for or against the personal representative. See Montague v. Thomason, 91 Tenn. 168, 18 S. W. 264." Kurn v. Weaver, supra.

We might add that when the cause was finally heard the deposition of Mr. Reaves taken on the matters arising under the plea in abatement was offered in evidence by his personal representative and was not objected to. In it he explained his side of the controversy.

■ The complainant was recalled and reexamined twice after the death of Mr. Reaves. There was no substantial change in his testimony. Much of it was repetition and elaboration, and while not vital we think this part of his deposition, on such recall, was incompetent.

■ ■ Accordingly, we have considered the entire record, including the testimony excluded by the Chancellor, and find the complainant, W. W. Bernard, and the deceased, Reaves, had been friends and associates for years, and until the rift in question occurred each had a high regard and esteem for the other. It is but fair to them to state that this rift or misunderstanding was not primarily between them but arose from the criticism by Mr. Reaves of the conduct of the business by Parks Bernard, a son of the complainant. This is not the first time harmonious partnership relations have been destroyed by admitting a son of one of the partners into the business.

In 1930 a partnership composed by W. W. Bernard, Park Bernard, J. S. Bernard, J. C. Vann and W. G.

Vann was formed to operate, and had contracted to buy, a tobacco warehouse at Knoxville. Due to conditions then existing they lacked the capital or credit needed for the operation of the business. Mr. Reaves apparently was in stronger financial condition, so it was agreed that W. G. Vann was to withdraw from the partnership and was to be succeeded by Reaves. This was done to improve the financial condition of such partnership. In addition, it was contemplated that Reaves would endorse its paper when necessary. The partnership agreement was not in writing. No time was fixed for its existence There was no agreement as to the amount he was to underwrite. Mr. Bernard says:

"Well at that time there was a general depression and I saw money matters getting close and I wanted extra support for help finance and felt that Mr. Reaves was sufficiently strong financially to carry on. . . . he came in with understanding to have a one-fifth interest and to render assistance that he felt conditions at that time warranted. . . . Well, he was to give full financial support to the business until it had reached a point where it was safe, and could carry itself on, independently of anybody's help."

Reaves said: "I came in to help them out."

It was largely if not wholly due to his help that the business operated in the season of 1930-1931. There was a fund due him but not payable in a case pending in the Chancery Court at Knoxville. He had the Receiver in such cause transfer the funds to a bank at Morristown and then borrowed it from that bank. He also endorsed for and aided the operation of the business until 1934, when he became dissatisfied with what he considered speculative dealings of Park Bernard, who lived in Knox-

ville and was in charge of the business. Reaves lived in Greeneville and was in Knoxville at infrequent intervals. This dissatisfaction led to the formation of a corporation. This was at the instance of Mr. Reaves. The application for the charter was prepared by a Mr. Britton on the instructions of the complainant. It is dated July 9, 1934, and was signed and acknowledged the same date by the incorporators, W. W. Bernard, J. S. Bernard and J. C. Vann. The application and certificate of acknowledgment was filed and recorded with the Secretary of State on July 16, but not registered with the Register of Knox County until September 25, 1934. Immediately after the corporation was organized it took over the business and operated for the 1934-1935 season. On December 26, 1935, J. S. Bernard, J. C. Vann and W. H. Reaves, directors, signed an agreement authorizing Reaves to liquidate the business and "cancel" the charter. It had ceased business about 10 months previously. Park Bernard was the president of the corporation; W. W. Bernard its Vice President; and Reaves the Treasurer. Stock had been issued to the parties in accordance with their interest in the partnership. The real estate contracted from the Planter's Warehouse, Inc., was not conveyed to the corporation as will hereinafter be shown.

It must have been the relations existing between Messrs. Bernard and Reaves which caused them to enter into such an indefinite and shadowy agreement. It had as its very fundamental the belief that the parties would get along harmoniously. The partnership could be dissolved at any time "by the express will of any partner when no definite term or particular undertaking is specified." Code, Sec. 7870(1) (b). Certainly this would terminate the agreement to render assistance or give

financial support to the partnership. In the next place, altho the complainant had faith in Reaves, there was no agreement as to the amount of such assistance, the manner in which it was to be rendered, or the time in which it was to be given. While faith may be the substance of things hoped for and evidence of things not seen, it cannot authorize us to make a contract for the parties. Sufficient it is to say that altho there is established an agreement whereby Mr. Reaves was to render some financial assistance, the evidence is clear that he did render some financial assistance. Even tho a contract is established, it is clear that the performance was at least to the extent of the agreement. Further, it will be noticed that Reaves was to render such financial assistance as "he felt conditions at that time warranted." This was merely giving him full discretion as he "felt" or believed, it to be to his interest. He became dissatisfied with the conduct of the business. Rightfully or wrongfully he believed Park Bernard was improperly operating it.. He felt or believed it was to his interest to relieve himself of further liability. He had a right to do so. The evidence fails to establish a breach so far as partnership operations were concerned. At another place, Mr. Bernard says that Mr. Reaves was "to assist in the financing to the best of his ability." There is no evidence as to his ability to further finance the business, or that he was called upon to do so even tho he was able. This was a conditional promise. The burden was on the complainant to show a breach. For instance, where there was a promise to pay "when able" a debt barred by the statute, the burden was on complainant to show ability to pay, and in the absence of such proof the suit

must be dismissed.  Shown v. Hawkins, 85 Tenn. 214, 2 S. W. 34.

When the corporation was formed, nothing was said about Mr. Reaves financing it.  However, it was the belief of the complainant that the agreement made in 1930 with the partnership would continue for the benefit of the corporation.  He testified:

"Q.  State whether or not at the time this charter was granted, or at any time before then or thereafter, was there ever any suggestion that the defendant Reaves was to be released from his obligation to render financial assistance until the business could carry itself?  A.  No, indeed."

We think there was no agreement that Mr. Reaves was to endorse for or give aid to the corporation.  But, if so, then there can be no liability thereunder for the same reasons given in our discussion of the promise to the partnership.  The change into a corporation from a partnership would work a great change in the status, rights and liabilities of the parties.  Again we say we cannot make a contract for the parties; we must take the record as made by them.

The weight of the proof shows the deed was never delivered by the Planter's Warehouse, Inc., to the original purchasers prior to the withdrawal of W. G. Vann and the subsequent entry of defendant Reaves, as a member of the partnership.  Nor was it delivered to the new partnership, or to the successor corporation.

On April 25, 1933, Mr. Reaves signed the following paper:

"April 25, 1933.

"This is evidence that I have agreed with W. W. Bernard, J. S. Bernard, Park Bernard and J. C. Vann

that they can leave my name out of the deed for the Brick Warehouse property bought of the Planters Warehouse Co. Inc. of Knoxville, Tenn. I am however interested to the extent of one fifth in the purchase of same but for reasons known by all interested it is mutually agreed that it might prove to the best interests of all parties concerned that my name does not appear in the deed at this time. It is agreed that at any time at my demand said parties named above are to execute a deed to me for one fifth interest. Settlement to be made as per statement of Aug. 2, 1932.

"W. H. Reaves."

This instrument was not signed by the other partners, or by W. G. Vann. They never acquired title. They never offered to execute deed to Reaves or made any demand under this agreement. The Planter's Warehouse, Inc., agreed to an adjustment or reduction of the amount due and offered to make a deed to the corporation if the debt was reduced to a certain specified amount. This payment was not made. The aforesaid W. W. Bernard, Park Bernard, J. S. Bernard and J. C. Vann agreed that title should "revert" to the owner; or as we understand it, that it be treated as if title had never passed from the said owner and that they would surrender possession thereof. This was voluntary on their part. Reaves had nothing to do with it. They did not divulge to the Planters Warehouse the existence of the aforesaid agreement or assert any right thereunder. If there was any equity in the building they voluntarily surrendered it.

Altho complaint is made of Mr. Reaves' failure to advance further credit to the corporation, the complainant testified:

"Q. Had you known of the actual amount of the bona fide indebtedness of this concern at the time surrendered could you have financed the business and continued operations? A. Easily could have hypothecated the equipment and carried on, stock had been issued, could have easily owned that business today."

It seems to us that this statement destroys the whole case for complainant. His son was president and in primary charge of the business. He himself was vice-president. His nephew was the book-keeper. The records were available. They were not taken over by Reaves until the business was terminated, and were thereafter turned over to Mr. Bernard by Mrs. Reaves during her husband's absence but apparently never objected to by him. Mr. Bernard had full opportunity to ascertain the condition of the business. Then, too, his statement shows the business was able to "carry itself on" and met the condition alleged in the agreement.

This renders it unnecessary for us to pass upon the right of an individual partner to sue for breach of an obligation to the partnership without making all partners parties to the suit.

We might add that when the partnership was succeeded by the corporation a settlement was had. It constituted a stated account and was pleaded as such in defendant's answer. There was not attempt to amend the bill so as to surcharge and falsify this account.

"Where complainant files a bill for a general account, and defendant sets forth a stated one, complainant must amend his bill, and by amendment surcharge and falsify the stated account." State ex rel. v. Follis, 140 Tenn. 513, headnote 9, 205 S. W. 444.

We do not understand that complaint is made as to the application of the proceeds of sale when the corporation was liquidated.

The complainant is not entitled to any relief and the decree below dismissing his bill is, for the reasons herein set forth, affirmed at his cost.