IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
July 21, 2009 Session

## CLARENCE E. JOHNSON v. TANNER-PECK, LLC, ET AL.

**Direct Appeal from the Chancery Court for Shelby County**
**No. 109807-2     Arnold B. Goldin, Chancellor**

_____

**No. W2008-00767-COA-R3-CV - Filed September 25, 2009**

_____

This is a summary judgment case. The trial court granted summary judgment in favor of the Appellee against his former employer, the Appellant herein. Finding that the Appellee presented sufficient proof to shift the burden of production to the Appellant pursuant to ***Hannan v. Alltel Publ'g Co.***, 270 S.W.3d 1 (Tenn. 2008), and that the Appellant failed to satisfy this burden, we affirm the grant of summary judgment. Because the trial court's order denying the Appellants' motion to revise the grant of partial summary judgment does not include the trial court's reasons, we cannot determine whether analysis under ***Harris v. Chern***, 33 S.W.3d 741 (Tenn. 2000) was necessary, or whether the trial court otherwise abused its discretion. Consequently, we vacate the trial court's denial of Appellants' motion to revise the grant of partial summary judgment, and remand for further proceedings. Affirmed in part, vacated in part, and remanded.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Vacated in Part and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

William Ernest Norcross, Cordova, Tennessee, for the Appellants, The Estate of William B. Tanner and Tanner-Peck, LLC N/K/A Tanner Investment Co., LLC.

George T. Lewis, III, Kristine L. Roberts, Memphis, Tennessee, for the Appellee, Clarence E. Johnson.

### OPINION

On or about October 1992, William B. Tanner hired Appellee Clarence E. Johnson as a salesman in the billboard business, which was owned and operated by William B. Tanner and entities owned or controlled by Mr. Tanner. The terms of Mr. Johnson's employment agreement included a base salary of $45,000 per year, two percent override of net profits, twelve percent commissions on personal sales, and allegedly an option to purchase up to five percent of the company. At the time Mr. Johnson joined the company, Mr. Tanner's business consisted of ownership and leases of real

property and ownership of personal property in excess of $1,000,000. In November 1994, Tanner-Peck, L.L.C. was organized as a Tennessee limited liability company. In January 1995, Mr. Tanner reorganized his business. As part of the reorganization, the business was transferred to Tanner-Peck, L.L.C. n/k/a Tanner Investment Company, L.L.C. Prior to the January 1995 reorganization, Mr. Tanner conducted his billboard business under the trade name "Tanner Outdoor." From 1992 through December 31, 1996, Mr. Tanner was the "Chairman and Chief Executive Officer" of Tanner Outdoor; his wife, Patricia Tanner, was the President. Ms. Tanner was also the Secretary.

Effective December 15, 1996, substantially all of the assets comprising Mr. Tanner's billboard business (which included Tanner-Peck, L.L.C., WBT Outdoor, Inc., and TOA Enterprises, L.P.) were sold to Universal Outdoor, Inc. and Tanner Acquisition Corporation, a subsidiary of Universal Outdoor, Inc. (collectively "Universal"), under an Option and Asset Purchase Agreement, dated September 12, 1996 (the "Universal Option Agreement"). This transaction was closed on January 2, 1997. Under the Universal Option Agreement, Universal had the option to purchase the assets comprising Mr. Tanner's billboard business for a purchase price of $70,880,000, plus 100,000 shares of Universal Outdoor, Inc. stock. In essence, during the period from the date of the Universal Option Agreement (September 12, 1996) until the closing of the transaction on January 2, 1997, Universal had an option to purchase substantially all of the assets comprising Mr. Tanner's billboard business. At the time of the January 2, 1997 closing, the assets comprising Mr. Tanner's billboard business were subject to liens securing approximately $21,000,000 in debt held by First Tennessee Bank. At the January 2, 1997 closing, First Tennessee Bank was paid the amount of the debt from the cash proceeds received from Universal. At the time of the January 2, 1997 closing, Universal shares were trading at $23.0625 per share.

Mr. Johnson ended his association with Mr. Tanner on January 13, 1997. On July 28, 1997, Mr. Johnson filed a "Complaint for Breach of Contract et al." against Tanner-Peck, L.L.C., William B. Tanner, individually and d/b/a Tanner-Peck Outdoor, d/b/a Tanner-Peck, d/b/a Tanner-Peck Outdoor Advertising, Jerry W. Peck, individually, and d/b/a Tanner-Peck Outdoor, d/b/a Tanner-Peck, d/b/a Tanner-Peck Outdoor Advertising, TOA, Limited, TOA Enterprises, L.P., Martin A. Grusin, Trustee of The Weatherley Tanner Trust, Universal Outdoor, Inc., WBT Outdoor, Inc., Tanner Acquisition Corporation, and Tanner Outdoor, L.L.C. In his Complaint, Mr. Johnson asserts that the defendants owe him $4,355,650, which amount is allegedly comprised of: (1) unpaid commissions in the amount of $585,200, (2) unpaid profit percentages in the amount of $120,450, and (3) unpaid 5% ownership interest in the amount of $3,650,000.

On or about August 26, 1997, William Tanner filed his answer to the complaint, wherein he denies that either he, individually, TOA Enterprises, WBT Outdoor, or Tanner-Peck, L.L.C. ever agreed to sell Mr. Johnson any portion of Mr. Tanner's billboard business. Mr. Tanner further asserts that Mr. Johnson has been paid all monies due him, and that Mr. Johnson was an at-will employee. Mr. Tanner also asserts the affirmative defenses that Mr. Johnson's claims are barred by: (1) the applicable statute of limitations, (2) the doctrine of accord and satisfaction, (3) the doctrine of waiver, (4) the doctrine of estoppel, and (5) the applicable statute of frauds. In it's answer, filed on August 26, 1997, Tanner-Peck, L.L.C. adopts, pursuant to Tenn. R. Civ. P. 10.04, the answers

and responses set forth in Mr. Tanner's answer; Tanner-Peck, L.L.C. also adopts the affirmative defenses relied upon by Mr. Tanner. In addition to these affirmative defenses, Tanner-Peck, L.L.C. also states that:

> 51. Tanner-Peck, L.L.C. did not acquire the assets comprising Tanner Outdoor, L.C. advertising business until on or about January 19, 1995.
> 52. Tanner-Peck, L.L.C. did not assume any of the past due obligations alleged by Johnson as being due to him prior to January 15, 1995.
> 53. Tanner-Peck, L.L.C. only assumed remuneration sums due Johnson, as an at-will employee, after January 19, 1995, and only so long as Johnson's employment continued.

On August 26, 1997, TOA Enterprises, L.P. filed its answer to the complaint. Therein, TOA Enterprises adopts the answers, responses, and affirmative defenses set forth in Mr. Tanner's answer. On the same day, Martin A. Grusin, as Trustee of the Weatherley Tanner Trust, filed a motion to dismiss the complaint against the Weatherley Tanner Trust.

The case remained inactive from 1999 until 2006. Mr. Tanner died on December 1, 2005. On December 16, 2005, the trial court entered an order granting Mr. Johnson's motion for substitution of the Representative of the Estate of William B. Tanner as a party defendant. Pursuant to this order, Patricia Tanner, Executrix of the Estate of William B. Tanner, was substituted for William B. Tanner as a party defendant.

On August 31, 2006, Mr. Johnson filed a motion for summary judgment, along with a statement of undisputed facts, and a memorandum of law in support thereof. Mr. Johnson also filed several affidavits, including his own, in support of the motion for summary judgment. On April 30, 2007, Ms. Tanner, as Executrix of the Estate of William B. Tanner, filed a motion to strike Mr. Johnson's affidavit asserting that portions of the affidavit violate the Dead man's statute. Ms. Tanner filed a response in opposition to Mr. Johnson's motion for summary judgment alleging among other things that (1) Johnson's claims are allegedly time barred under Tenn. Code Ann. §28-3-105(1), (2) Johnson's claims for breach of contract are barred by the Tennessee Statute of Frauds, Tenn. Code Ann. § 29-2-101, (3) Johnson's alleged oral agreement is indefinite on an essential element and is, therefore, not an enforceable contracts, and (4) Johnson, by his acts and conduct, over a period of four years, waived any claim that there was an oral agreement pursuant to which Mr. Tanner agreed to pay Mr. Johnson twelve percent of Mr. Johnson's personal sales and to permit Mr. Johnson to purchase a five percent interest in the assets of Mr. Tanner's billboard business. On or about June 6, 2007, Mr. Johnson filed a memorandum of law in response to the Tanner defendants' response to the motion for summary judgment. Attached to it were the following: (1) June 5, 2007 Affidavit of Karen Gregory, (2) June 4, 2007 Affidavit of Jerry Peck, (3) June 4, 2007 Affidavit of Pat McGee, and (4) June 3, 2007 Affidavit of Sidney Mendelson.

The motion for summary judgment was heard on October 4, 2007.  By Order of December 13, 2007, the trial court granted Mr. Johnson's motion.  In its Order, the trial court specifically determined that the terms of the employment agreement between Johnson and Tanner included "a base salary of $45,000 per year, a two percent (2%) override of net profit, twelve percent (12%) commission on personal sales, and an option to purchase five percent (5%) of the company."  The trial court ultimately awarded Mr. Johnson $120,450 in unpaid profit overrides, $852,000 for unpaid commissions on Mr. Johnson's personal sales, and $3,383,000 "for not being allowed to exercise his five percent (5%) purchase option."  In arriving at the $3,383,000 award on the purchase option, the trial court took judicial notice of what the Universal stock was trading at on September 12, 1996.

On January 11, 2008, the Estate of William B. Tanner and Tanner-Peck, L.L.C n/k/a Tanner Investment Company, L.L.C moved the court to alter or amend its judgment, and specifically asked the court to reconsider the granting of summary judgment against Tanner-Peck, L.L.C.  In support of this argument, the Tanner defendants contend that Tanner-Peck was not in existence in October 1992, the date that Mr. Johnson was hired.  The Tanner defendants further assert that the undisputed facts establish that: (1) Tanner-Peck, L.L.C. was not organized until November 1994, more than two years after the trial court found that Mr. Tanner entered into the employment agreement with Mr. Johnson, and (2) Tanner-Peck, L.L.C. did not become the owner of Tanner's billboard business until January 1995.  The Tanner defendants assert that the judgment against the Estate should be reduced by $907,364.  In support of this argument, the Tanner defendants assert that the trial court improperly used the value of the Universal stock as of September 12, 1996 (the date of the Universal Option Agreement), in determining damages, as opposed to the price of the stock on January 2, 1997, the date the Universal purchase and sale transactions were closed.  Filed simultaneously with the motion to alter or amend was the January 11, 2008 Affidavit of Patricia Tanner.  This motion was denied by Order of March 13, 2008.  The Estate of William B. Tanner and Tanner-Peck, L.L.C. n/k/a Tanner Investment Company, L.L.C. appeal and raise five issues for review:

> 1.  Did the Chancery Court of Shelby County, Tennessee...err when it granted Plaintiff/Appellee Clarence E. Johnson's motion for summary judgment against the Defendant/Appellant Estate of William B. Tanner?
>
> 2.  Did the trial court err when it granted Johnson's motion for summary judgment against Defendant/Appellant Tanner-Peck, L.L.C. n/k/a Tanner Investment Company, L.L.C.?
>
> 3.  Did the trial court err when it denied the motion of the Estate to alter or amend the summary judgment entered against the Estate in which the trial court granted Johnson's motion for summary judgment?
>
> 4.  Did the trial court err when it denied the motion of Tanner-Peck, L.L.C. n/k/a Tanner Investment Company, L.L.C. to alter or amend

-4-

the summary judgment in which the trial court granted Johnson's motion for summary judgment?

5.  Did the trial court err when the trial court, in the March 13, 2008 order denying the motion of defendants, Estate of William B. Tanner and Tanner-Peck, L.L.C. n/k/a Tanner Investment Company, L.L.C. to alter or amend the summary judgment granted to plaintiff Clarence Johnson on December 13, 2007, ordered that the January 11, 2008 affidavit of Patricia Tanner and the attachments thereto be stricken from the record?

A trial court's decision to grant a motion for summary judgment presents a question of law. Therefore, our review is *de novo* upon the record with no presumption of correctness afforded to the trial court's determination. ***Bain v. Wells***, 936 S.W.2d 618, 622 (Tenn. 1997). In evaluating the trial court's decision to grant summary judgment, we view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. ***Byrd v. Hall***, 847 S.W.2d 208, 210-11 (Tenn. 1993); ***Mooney v. Sneed***, 30 S.W.3d 304, 305-06 (Tenn. 2000). When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04; ***West v. E. Tenn. Pioneer Oil Co.***, 172 S.W.3d 545, 550 (Tenn. 2005). If the moving party's motion is properly supported, "the burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists." ***Hannan v. Alltel Publ'g Co.***, 270 S.W.3d 1, 5 (Tenn. 2008) ( citing ***Byrd***, 847 S.W.2d at 215). In order to shift the burden of production, "the moving party must either affirmatively negate an essential element of the nonmoving party's claim or establish an affirmative defense." ***Hannan***, 270 S.W.3d at 5. However, "[i]t is not enough for the moving party to challenge the nonmoving party to 'put up or shut up' or even to cast doubt on a party's ability to prove an element at trial." ***Id***. at 8. Instead, the moving party has the more difficult task of demonstrating "that the nonmoving party cannot establish an essential element of the claim at trial." ***Id***. at 7.

Our first task in this cases is to determine if Mr. Johnson put forth sufficient evidence to shift the burden of production to the Tanner defendants. ***Hannan v. Alltell Publ'g Co.***, 270 S.W.3d at 5. Turning to the record, Mr. Johnson provided the court with his own affidavit, and those of Karen Gregory, Jerry Peck, Pat McGee, and Sidney Mendelson in support of his motion for summary judgment.   Tenn. R. Civ. P. 56.06 provides:

**56.06. Form of Affidavits —Further Testimony —Defense Required.** — Supporting and opposing affidavits shall be made on personal knowledge, such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented

or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but his or her response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party....

Sidney Mendelson was employed as a sales manager, and worked with Messrs. Johnson and Tanner. His Affidavit states, in relevant part:

> During my contract negotiations with William B. Tanner, I demanded a 5% option to purchase stock in Tanner's company. William B. Tanner told me during those negotiations that only Clarence Johnson would have the 5% option because Mr. Johnson was with the company from the beginning and that Mr. Johnson was the only employee that earned this option.

Jerry Peck's Affidavit states:

> I was made aware of Clarence Johnson's 5% ownership by [William B. Tanner] on multiple occasions in discussions with [William B. Tanner] as the company grew and as the changes in operational LLCs took place.

Karen Gregory's Affidavit states, in pertinent part:

> I overheard and witnessed the phone conversation between Clarence Johnson and William B. Tanner in October of 1992 in Jackson, Tennessee. I watched as Johnson talked with Tanner and checked off each item on a notepad Johnson had listing the provisions of employment. One of the provisions was an option to purchase up to 5% ownership of the Tanner-Peck Outdoor Company [that] Tanner was hiring Johnson for.

Although Pat McGee admits that she had no knowledge of Mr. Johnson's alleged right to 5% of the company, her Affidavit does address the other terms of Mr. Johnson's employment, to wit:

> I am aware through conversations with William B. Tanner that Clarence Johnson's employment arrangement with Tanner included a 2% override of net profit; 12% commission on personal sales; and Johnson was hired as general manager.

Mr. Johnson's own Affidavit is very detailed and, in the interest of judicial economy, we will not reproduce it. Suffice it to say that his Affidavit, describes his negotiations with Mr. Tanner in the Spring of 1992. It includes documents and notes made by Mr. Johnson during these negotiations, and sets forth a detailed description of statements made by Mr. Tanner during the course of the business relationship. Mr. Johnson's Affidavit, as well as those of Messrs. Mendelson and Peck, and Ms. Gregory and Ms. McGee all contain statements based upon the affiants' personal knowledge and, consequently, comport with the requirements of Tenn. R. Civ. P. 56.06, *supra*. Despite this fact, the Tanner defendants argue that the affidavits proffered by Mr. Johnson in support of his motion for summary judgment should be excluded because they violate the Dead man's statute, which is codified at Tenn. Code Ann. § 24-1-203. The statute provides:

> In actions or proceedings by or against executors, administrators, or guardians, in which judgments may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate, or ward, unless called to testify thereto by the opposite party. If a corporation is a party, this disqualification shall extend to its officers of every grade and its directors.

As discussed by this Court in **Bernard v. Reaves**, 178 S.W.2d 224 (Tenn. Ct. App. 1943), the Dead man's statute "contemplates those cases wherein judgment may be rendered for the representative party and against the proposed witness, or vice versa. **It does not comprehend a case wherein no judgment could be rendered for or against the one called upon the testify**, even though a judgment might be rendered for or against the personal representative." *Id.* at 228 (emphasis added). It has been said that the purpose of the statute is "to prevent the surviving party from having the benefit of his own testimony, when, by the death of his adversary, his representative was deprived of his executor's version of the transaction or statement." **McDonald v. Allen**, 67 Tenn. 446, 448 (1874). Because the statute may operate to exclude accurate evidence, it is "strictly construed as against the exclusion of the testimony and in favor of its admission." **Haynes v. Cumberland Builders, Inc.**, 546 S.W.2d 228, 231 (Tenn. Ct. App.1976). Thus, we must interpret the statute literally. *See id.* at 230-31; Neil P. Cohen, Sarah Y. Sheppeard & Donald F. Paine, Tennessee Law of Evidence § 6.01[5][c] (5th ed.2005).

The trial court concluded that certain statements in Mr. Johnson's own affidavit (specifically, paragraphs 2, 4, 6, 7, 10-12, and 16-19 thereof) should be stricken from the record as these portions violate the Dead man's statute. We agree that these portions of Mr. Johnson's Affidavit contain statements attributed to Mr. Tanner in order to establish Mr. Johnson's version of the employment agreement between the two men. Consequently, we conclude that the trial court correctly excluded these portions of Mr. Johnson's Affidavit. However, the Affidavits of Ms. Gregory, Ms. McGee, and Messrs. Mendelson and Peck do not violate the Dead man's statute because none of them are parties to this lawsuit. Moreover, although Tenn. Code Ann. § 24-1-203 disqualifies the testimonies of officers and directors if a corporation is a party, there is no evidence in the record that Ms. McGee, Ms. Gregory, Mr. Mendelson, or Mr. Peck were officers or directors of any Tanner business entity.

We have reviewed these affidavits, and conclude that each satisfies the requirements of Tenn. R. Civ. P. 56.06. In each case, the affiant has set forth specific facts indicating that their respective statements are based upon personal knowledge. Because the affidavits, are not otherwise excluded under the Dead man's statute, we conclude that Mr. Johnson effectively shifted the burden to the Tanner defendants to present sufficient evidence to establish the existence of a dispute of material facts.

The Tanner defendants' sole, supporting affidavit is that of Mr. Tanner's widow, Patricia Tanner. In reviewing Ms. Tanner's Affidavit, we find that the majority of her statements relate to the reorganization of Mr. Tanner's billboard business. These facts are not in dispute. Concerning Mr. Johnson's claims, Ms. Tanner states only that:

> 21. At no time did William B. Tanner agree that Johnson could purchase a five (5%) percent interest in Tanner's Billboard Business or in any entity owning an interest in Tanner's Billboard Business.
>
> 22. William B. Tanner, TOA Enterprises, L.P. and Tanner-Peck, LLC have paid Johnson any and all sums due him.
>
> 23. Neither the Estate of William B. Tanner, Tanner Investment Company, LLC , nor any other business entity with which either I or my late husband, William B. Tanner, were affiliated with owe Johnson anything.

Tenn. R. Civ. P. 56.06 requires affidavits to "be made on personal knowledge." There is no indication in Ms. Tanner's Affidavit as to where she gleaned the averred information other than the conclusory statement that "I have first hand knowledge of the matters set forth in this Affidavit." In *Mechanics Laundry Service v. Auto Glass Co. of Memphis, Inc.*, 98 S.W.3d 151 (Tenn. Ct. App. 2002), this Court held that "[m]ere conclusory allegations will not suffice to support or defeat a motion for summary judgment." *Id*. at 158 (citing *Davis v. Robb*, 794 F.2d 1129 (6th Cir. 1986)); *see also Davis v. Campbell*, 48 S.W.3d 741, 747 (Tenn. Ct. App. 2001) ("Mere conclusory generalizations will not create a material factual dispute sufficient to prevent the trial court from granting a summary judgment."). Unlike the Affidavits proffered by Mr. Johnson, which refer to specific events and conversations where the terms of Mr. Johnson's employment agreement were discussed, Ms. Tanner's Affidavit contains only conclusory statements, which do not appear to be based upon actual personal knowledge. Consequently, Ms. Tanner's Affidavit fails to set forth specific facts showing a genuine issue for trial as required under Tenn. R. Civ. P. 56.06.

Moreover, according to her Affidavit, Ms. Tanner is both the Executrix of Mr. Tanner's Estate and the "Chief Manager of Tanner Investment Company, LLC...." The purpose of the Dead man's statute is to protect estates from spurious claims. *In re Estate of Marks*, 187 S.W.3d 21, 28 (Tenn. Ct. App. 2005), *perm. app. denied* (Tenn. Feb. 21, 2006) (relying upon *Morfin v. Estate of Martinez*, 831 N.E.2d 791, 798 (Ind. Ct. App. 2005)). It is based on the common-law principle that

an interested party will be powerfully tempted to misrepresent transactions or communications with a deceased person who cannot rebut the party's testimony. *Id.* (relying upon *Schimpf v. Gerald, Inc.*, 52 F. Supp.2d 976, 987 (E. D. Wis.1999)). Accordingly, the Dead man's statute prevents interested parties from giving self-serving testimony regarding conversations or transactions with the deceased when the testimony involves transactions or statements that would either increase or decrease the deceased's estate. *Cantrell v. Estate of Cantrell*, 19 S.W.3d 842, 846 (Tenn. Ct. App.1999). As the widow of Mr. Tanner, the Executrix of his estate, and "Chief Manager" of Tanner Investment Company, Ms. Tanner is an interested party in this lawsuit. Therefore, we conclude that Ms. Tanner's testimony is inadmissible regardless of whether it comports with Tenn. R. Civ. P. 56.

Having determined that Ms. Tanner's Affidavit was properly excluded under either Tenn. R. Civ. P. 56.06, or under Tenn. Code Ann. § 24-1-203, and that certain portions of Mr. Johnson's Affidavit are inadmissible, the proof in this case consists of the undisputed Affidavits of Mr. Mendelson, Ms. McGee, Ms. Gregory, and Mr. Peck. Those facts, as set out above, are that Mr. Johnson did have a valid and definite employment agreement with Mr. Tanner, which agreement included a 2% override of net profit, 12% commission on personal sales, and an option to purchase 5% of Tanner's billboard business. Based upon these undisputed facts, we conclude that the trial court correctly rendered summary judgment in favor of Mr. Johnson. The remaining question is whether the trial court's award of damages was correctly determined.

Mr. Johnson alleged that he was entitled to $852,000 in unpaid commissions on personal sales, $120,450 in unpaid profit overrides, and $3,650,000 for the 5% ownership interest. In arriving at these figures, Mr. Johnson relies upon the testimony of Robert Vance, Certified Public Accountant. Mr. Vance prepared a valuation of Tanner-Peck dated May 10, 2006 for the purpose of calculating the fair value of the 5% equity interest in the company as of April 30, 1993. According to Mr. Vance, the fair value as of that date was $322,000. From our review of the record, the Tanner defendants have offered no evidence to dispute Mr. Vance's calculations. Specifically, the Tanner defendants did not present the testimony of their own expert, nor did they deny the veracity of the financial documents that were admitted into evidence. We concede that, in her Affidavit, Ms. Tanner states that Tanner-Peck sold for $70,880,000 plus 100,000 shares of Universal stock. Mr. Johnson, relying upon Mr. Vance's calculations, asserts that Tanner-Peck sold for $74,100,000. In resolving this seeming disparity, the court took judicial notice that the closing price of the 100,000 shares of Universal stock as of September 12, 1996, was $3,280,000, or $32.75 per share. Using this value, the trial court, in its order, reasoned that, "[i]f the value of the shares is added to the cash price supplied by Patricia Tanner, the total is $74,100,000.00, the amount supplied by Johnson." Relying upon Mr. Vance's undisputed Affidavit, the trial court ruled that Mr. Johnson was entitled to $3,383,000 for not being allowed to exercise the 5% purchase option. This amount was calculated by taking the difference between the $322,000 exercise price and $3,705,000, which is 5% of $74,100,000. Even if we find that Ms. Tanner's Affidavit created a dispute of fact regarding the sales price of Tanner-Peck, her affidavit is inadmissible under the Dead man's statute. Regardless, we do not conclude that the trial court erred in its valuation of the purchase option. This is especially true in light of the fact that the Tanner defendants offered no proof to dispute the testimony of Mr. Vance.

On January 11, 2008, the Tanner defendants moved the court, pursuant to Tenn. R. Civ. P. 59.04, to alter or amend its order granting Mr. Johnson's motion for summary judgment. As discussed by our Supreme Court in *Harris v. Chern*, 33 S.W.3d 741 (Tenn. 2000), "the Tennessee Rules of Civil Procedure do not authorize motions 'to reconsider' a grant of summary judgment" *Id.* at 743 (citing *McCracken v. Brentwood United Methodist Church*, 958 S.W.2d 792, 794 n. 3 (Tenn. Ct. App. 1997)). Instead, the rules allow for motions "to alter or amend a judgment," Tenn. R. Civ. P. 59.04, or motions "to revise" a non-final partial judgment, see Tenn. R. Civ. P. 54.02. Rule 54.02 applies to cases, such as this one, in which judgment was not entered as to all of the defendants or claims. That rule provides that in the absence of a final judgment:

> any order or other form of decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of the judgment adjudicating all the claims and the rights and liabilities of all the parties.

Tenn. R. Civ. P. 54.02.

Rule 54.02 requires that a judgment disposing of fewer than all of the claims or fewer than all of the parties is final only when the trial court makes "an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." Tenn. R. Civ. P. 54.02. This determination is an "absolute prerequisite" to a final judgment in such a case. *Fox v. Fox*, 657 S.W.2d 747, 749 (Tenn.1983); *Stidham v. Fickle Heirs*, 643 S.W.2d 324, 325 (Tenn. 1982). Here, the Order granting Mr. Johnson's motion for summary judgment contains no express determination of finality by the trial court . Accordingly, the initial grant of summary judgment in this case was non-final and was subject to revision until it was expressly made final in accordance with Rule 54.02.[1]

Because Ms. Tanner has submitted additional evidence in support of her motion to revise the grant of summary judgment, we must follow the analysis adopted by the Supreme Court in *Harris v. Chern*, 33 S.W.3d at 746. In *Harris*, the Supreme Court held that in adjudicating Tenn. R. Civ. P. 54.02 motions where new evidence has been submitted, the trial court must consider:

> 1) the movant's efforts to obtain evidence to respond to the motion for summary judgment; 2) the importance of the newly submitted evidence to the movant's case; 3) the explanation offered by the movant for its failure to offer the newly submitted evidence in its initial response to the motion for summary judgment; 4) the

---

[1] This case became appealable as of right under Tenn. R. App. P. 3 with the inclusion of Tenn. R. Civ. P. 54 language in the trial court's March 13, 2008 Order, denying the Tanner defendants' motion to revise the grant of partial summary judgment.

likelihood that the nonmoving party will suffer unfair prejudice; and
5) any other relevant factor.

*Id.* (citations omitted). In making this analysis, a trial court must make a record of the findings of fact and conclusions of law that support its ruling. *Id.* We note that "*Harris* addresses the factors a trial court should weigh in determining whether [] to consider the new[] evidence."*Shelburne v. Frontier Health*, No. E2000-025510COA-R3-CV, 2001 WL 1328531 (Tenn. Ct. App. Oct. 29 2001)(rev'd on other grounds). However, this analysis "does not come into play in a case...where the trial court has in fact *considered* the newly submitted evidence. *Id.* A trial court's ruling on a motion to revise pursuant to Tenn. R. Civ. P. 54.02 will be overturned only when the trial court has abused its discretion. *Harris v. Chern*, 33 S.W.3d at 746 (relying on *Donnelly v. Walter,* 959 S.W.2d 166, 168 (Tenn. Ct. App. 1997)).

In support of its Rule 54.02 motion, the Tanner defendants offered the January 11, 2008 Affidavit of Patricia Tanner, along with numerous attachments thereto. We have reviewed the record and are unable to determine the trial court's reasoning behind the denial of the motion to revise. In its order denying the motion, the trial court states only that "it is not appropriate for the subsequent January 11, 2008 affidavit of Pat Tanner and its attachments to be considered as part of the record." The trial court may have considered the second affidavit, thus negating the need for a *Harris* analysis and may have excluded it for reasons similar to the exclusion of Mrs. Tanner's original affidavit. Conversely, the trial court may not have considered the second affidavit, which would create a need for a *Harris* analysis on the record. However, from the trial court's order, it is impossible to know whether either of these scenarios is correct. Consequently, we cannot determine whether the trial court overlooked its obligation under *Harris*, or otherwise abused its discretion. Therefore, we must vacate the trial court's denial of the motion to revise and remand for consideration of, and findings based upon the above cited authorities.

For the foregoing reasons, we affirm the order of the trial court granting summary judgment to Mr. Johnson. We vacate the denial of the Tanner defendant's Tenn. R. Civ. P. 54.02 motion, and remand for further proceedings as may be necessary and consistent with this Opinion. Costs of this appeal are assessed against the Appellants, the Estate of William B. Tanner and Tanner-Peck, LLC, and their surety.

_____
J. STEVEN STAFFORD, J.